STATE of Missouri ex rel. MARYLAND HEIGHTS CONCRETE CONTRAC-
TORS, INC., Relator,

v.

The Honorable Franklin R.
FERRISS, Respondent.

No. 61116.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1979.

Rehearing Denied Nov. 14, 1979.

Peter B. Hoffman, Joseph M. Kortenhof, Kortenhof & Ely, St. Louis, for relator.

Lawrence B. Grebel, Donald L. James, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney·& Brown, St. Louis, for respondent.

PER CURIAM.

This is an original proceeding in prohibition. The case arises out of a wrongful death action filed by the survivors of Donald Meiser against Maryland Heights Concrete Contractors, Inc. (hereinafter "Maryland"). Maryland was a subcontractor of

Meiser's employer, Charter Development Corporation (hereinafter "Charter"). The plaintiffs alleged that Meiser was killed at a construction site by the explosion of a space heater due to Maryland's negligence. Maryland denied negligence on its part, asserted contributory negligence by Meiser, and filed a third-party petition against several third-party defendants, including Charter, asserting that each third-party defendant shared responsibility for the death. Charter moved to dismiss the third-party petition against it, asserting that as Meiser's employer, its liability under The Workmen's Compensation Law excluded all other liability. See section 287.120, RSMo 1978. After argument on October 20, 1978, respondent Judge Ferriss indicated his intention to sustain Charter's motion to dismiss. Our preliminary rule in prohibition issued December 18, 1978.

The question is whether Charter, as Meiser's employer, can be made a defendant in the underlying case under the authority of *Missouri Pacific Railroad Company v. Whitehead & Kales Company*, 566 S.W.2d 466 (Mo. banc 1978).

We need not examine the breadth and scope of *Whitehead & Kales, supra*, because the question is answered by section 287.-120.1, RSMo 1978, which provides:

   1.  Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. . . . "

The statute, supra, is clear and unambiguous. It operates to release the employer from all other liability. In *McDonnell Air. Corp. v. Hartman-Hanks-Walsh P. Co.*, 323 S.W.2d 788 (Mo.1959), the court allowed the non-employer defendant to maintain an indemnity action against the employer of the injured employee but only on the basis that the employer defendant (*Hartman*) had breached a duty it expressly agreed (contracted) to perform with the non-employer (*McDonnell*). The rationale of the *McDonnell case, supra*, supports the conclusion that, aside from the exception noted therein, the employer is not liable to the non-employer defendant for any sums that non-employer party is liable for to the injured plaintiff-employee in tort.

■  Other cases cited by relator have been considered. The court holds that section 287.120.1, RSMo 1978, statutorily immunizes Charter, the employer, from common-law liability to Maryland Heights Concrete Contractors, Inc., and *Missouri Pacific Railroad Company v. Whitehead & Kales Company, supra*, does not remove the immunity conferred by section 287.120.1, supra.

Relator contends section 287.120.1 violates sections 2, 10, and 14 of Art. 1, Mo. Const.,[1] and the due process clauses of the U.S. Constitution, amendments 5 and 14. Similar attacks were made upon the Florida statute which immunized the employer from liability in tort for contribution in a suit by a negligent third-party defendant. The contentions were rejected in *Seaboard Coast Line R. Co. v. Smith*, 359 So.2d 427 (Fla.1978). In speaking about workmen's compensation, the court stated at 429:

   "The Workmen's Compensation Act, by its express terms, replaces tort liability of

---

1. Art. 1, sec. 2: "That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design."

Art. sec. 10: "That no person shall be deprived of life, liberty or property without due process of law."

Art. 1, sec. 14: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

the employer with strict liability for payment of the statutory benefits without regard to fault. An employer under this Act is not liable in tort to employees by virtue of the express language of the Act. Such immunity is the heart and soul of this legislation which has, over the years been of highly significant social and economic benefit to the working man, the employer and the State. And, whether the injury to the employee is caused by 'gross negligence', 'wanton negligence', 'simple negligence' passive or active, or no negligence at all of the employer, is of no consequence. There is no semblance of suggestion in these statutes that the Legislature intended to make any distinction in degrees of negligence so far as the employer's immunity is concerned and we see no reason or logic in any distinction. Section 440.11, supra, precludes an employer from being designated a person 'jointly or severally liable in tort for the same injury to person or property' as used in the contribution act. This provision seems to be supported by the great weight of authority."

And thereafter, in addressing the constitutional challenge, the court stated at 429–430:

"As to the constitutional challenge of Section 440.11, as set forth above, we adopt as ours the views expressed in *Coates v. Potomac Electric Power Co.*, 95 F.Supp. 779 (D.D.C.1951), with reference to the Federal counterpart of our Workmen's Compensation Act, when the Federal employer immunity was challenged as against the due process clause because the tort liability immunity precluded a third party tortfeasor from obtaining contribution from a negligent employer as follows:

" '[3, 4] Enactment of the Longshoremen's and Harbor Workers' Compensation Act has been held a valid exercise of the constitutional authority of the Congress . . .

" '[5] . . . by the holding that the Gas Company is lifted from the category of joint tort-feasor by § 905, Potomac Electric is deprived of the right to contribution which it otherwise might have claimed. However, the right to contribution is not a vested right on which legislation may not impinge . . . liability in tort is several not joint, however many participate in inflicting the wrong and whether they act separately or in conjunction. Tort-feasors come severally into court, however, many may be brought together, and each is bound to the injured person separately and for the full injury. . . .

" 'In a case where the employer has paid compensation under the Act, a balancing of the equities does not require allowance of contribution. The Longshoremen's Act substitutes for the employer's common law liability for damages to an injured employee an absolute duty to pay the prescribed compensation, broadening his duty to pay compensation to include injuries for which he otherwise would not be required to respond, . . . "To impose a noncontractual duty of contribution on the employer is *pro tanto* to deprive him of the immunity which the statute grants him in exchange for his absolute, though limited, liability to secure compensation to his employees." . . .' "

■ The holding of *Seaboard Coast Line R. Co. v. Smith, supra,* is sound and applicable here.

The court holds section 287.120.1, RSMo 1978, is not unconstitutional for any of the reasons asserted by relator in this case.

The respondent trial judge was correct. The third-party petition seeking contribution from the employer Charter should be dismissed. Our preliminary rule in prohibition is quashed.

BARDGETT, C. J., RENDLEN, MORGAN, JJ., and HIGGINS, Special Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., and HENLEY, Senior Judge, dissent and concur in separate dissenting opinion of DONNELLY, J.

WELLIVER, J., not sitting.

DONNELLY, Judge, dissenting.

In *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573 (Mo. banc 1978), this Court affirmed a $300,000 judgment against Missouri Pacific for damages sustained by Robert Sampson, an employee of its consignee.

In *Missouri Pacific Railroad Company v. Whitehead & Kales Company*, 566 S.W.2d 466 (Mo. banc 1978), the appeal involved an attempt by Missouri Pacific, under Rule 52.11, to bring Whitehead & Kales into the *Sampson* case as a third party defendant liable to Missouri Pacific for all or part of Sampson's claim against Missouri Pacific. The trial court dismissed the third party petition. We reversed and remanded, and adopted a system for the distribution of tort liability on the basis of *relative fault*, which will apply (1) where tort-feasors are joined as defendants by plaintiff and defendants cross-claim under Rule 55.32(f); and (2) where tort-feasors are added as defendants under Rule 52.11.

The question posed in this case is: How do we adjust and apply the system of *relative fault* in those situations, like the present, where judgment and recovery against one of multiple defendants is legally barred? In this case the bar is raised by The Workmen's Compensation Law. The purpose of that Law would be circumvented if Charter, the employer, could be held liable to Maryland for Charter's relative fault in causing plaintiff's harm. Therefore, a judgment cannot be entered against Charter in this case. A similar situation, with similar result, would arise if the legal bar were in the form of a release given by the plaintiff to one of multiple defendants. See e. g., *State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829 (Mo. banc 1979). Again, the purpose and function of the release would be circumvented if the released defendant could be held liable to other defendants for his relative fault in causing plaintiff's harm. Therefore, a judgment could not be entered against the released party.

Inability to render a judgment against all multiple tort-feasors, however, does not make it necessary that we narrow the application of the *relative fault* concept in this case. The *relative fault* of Maryland, the tort-feasor, against which there is no legal bar to judgment should still be determined. In my view, a pure concept of *relative fault* requires that the right of a claimant to recover from one tort-feasor be determined in accordance with a jury's finding of the respective percentages of fault as between *all* tort-feasors.

*To illustrate* :

A sues B. B brings in C. The jury assesses A's total damages at $100,000, and finds B 60% at fault and C 40% at fault. Prior to trial, A gave C a release for a consideration of $20,000. The trial court would enter judgment for A against B for $60,000. A would collect a total of $80,000.

A sues B. B brings in C. The jury assesses A's total damages at $100,000, and finds B 60% at fault and C 40% at fault. Prior to trial, A gave C a release for a consideration of $50,000. The trial court would enter judgment for A against B for $60,000. A would collect a total of $110,-000.

A sues B. B brings in C. The jury assesses A's total damages at $100,000, and finds B 60% at fault and C 40% at fault. A, as an employee of C, has received benefits in the amount of $8,000 under The Workmen's Compensation Law but is barred from further recovery against C by § 287.-120, RSMo 1978. The trial court would enter judgment for A against B for $60,000. A would collect a total of $68,000.

The need to determine the relative fault of tort-feasors would also require that motions to sever under Rule 66.02 would seldom, if ever, be granted where judgment against one tort-feasor is legally barred. Informing the jury of any extra-judicial payments by the non-liable tort-feasor to

the plaintiff, *e. g.* workmen's compensation payments, or consideration for a release, would likewise interfere with the determination of relative fault and thus would not be permitted.

To return to the case before us: Even though a judgment cannot be entered against Charter because of the bar raised by The Workmen's Compensation Law, Charter should remain a party in the action in order to assure an accurate and fair determination of the relative fault and liability of Maryland. *See* Rule 52.04(a), which provides, in effect, that Charter should remain a party in this action because "in * * * [its] absence complete relief cannot be accorded among * * *" plaintiffs and Maryland.

I would make the preliminary rule in prohibition absolute.

I respectfully dissent.