

# IN THEMISSOURI COURT OF APPEALS WESTERN DISTRICT

LANDON STERLING, )
)
Appellant, )
)
v. ) WD77809
)
MID AMERICA CAR, INC., ) Opinion filed: December 23, 2014
)
Respondent. )

## APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

Before Division Two: Joseph M. Ellis, Presiding,Judge,
Victor C. Howard,Judge and Mark D. Pfeiffer,Judge

Appellant Landon Sterling appeals from a final award allowing compensation entered by the Labor and Industrial Relations Commission ("the Commission"). Appellant contends that the Commission erred in failing to award his counsel a 25% attorney's lien on the $38,462.07 in medical bills that Respondent Mid-America Car, Inc. ("Employer") initially denied liability for but subsequently paid after Appellant sought counsel and filed a workers' compensation claim. For the following reasons, we affirm the Commission's award.

On May 12, 2011, Appellant was working for Employer when he burnt his right elbow on hot slag while welding. Appellant informed Employer of the injury but did not seek medical attention on the day of the incident. In the following days, Appellant

began experiencing pain and swelling in his arm, but Employer instructed him to keep working. On May 17, 2011, Appellant began vomiting and went to the emergency room. Appellant was subsequently hospitalized for infection and underwent surgery on his elbow. Prior to Appellant's surgery, the hospital contacted Employer and requested payment for Appellant's medical treatment, but Employer refused the claim. As a result of his hospitalization and surgery, Appellant incurred $38,462.07 in medical expenses. Appellant did not pay any of the medical bills related to the injury.

In December 2011, Appellant retained counsel ("Counsel") and filed a workers' compensation claim against Employer. In his claim, Appellant alleged that he injured his right elbow in the ordinary course and scope of his employment and was entitled to unpaid medical bills, temporary total disability, permanent partial disability, disfigurement, and possible future medical. Employer admitted that Appellant was its employee but denied all other allegations in Appellant's claim.

In January 2012, Counsel sent Employer a "Notice of Report" to which he attached a copy of Appellant's medical bills. Then, following Employer's deposition of Appellant, Counsel sent a formal settlement offer to Employer outlining Appellant's unpaid medical bills and Appellant's estimated workers' compensation benefits. On March 7, 2012, Employer sent Counsel a fax indicating it intended to pay Appellant's medical bills. Soon thereafter, Counsel sent Employer a letter indicating Counsel's belief that he was entitled to a 25% attorney's lien on "the proceeds" paid by Employer "for medical bills or for any items of compensation." By July 2012, Employer had negotiated with Appellant's medical providers and paid Appellant's $38,462.07 in medical bills at the discounted rate of $18,953.16. Employer paid the $18,953.16

2

directly to the medical providers and agreed to hold Appellant harmless for any future medical bills related to the injury. Employer, however, did not accept Appellant's settlement offer or recognize Counsel's notification regarding the 25% attorney's lien.

On February 6, 2014, a hearing was held before an administrative law judge ("ALJ") to determine Employer's liability and to determine issues pertaining to Counsel's attorney's lien. The parties stipulated that Appellant sustained an injury arising out of and in the course of his employment with Employer and that the $18,953.16 paid by Employer represented the full amount of outstanding medical bills.

The parties further stipulated to the admission of several exhibits, including the attorney-client contract between Appellant and Counsel. The contract states that Appellant agreed to pay Counsel "twenty-five percent (25%) of all gross proceeds including future payments. Medical bills and medical liens are the total responsibility of the client to pay and do not reduce the attorney fees." No testimony was offered regarding the attorney-client contract at the hearing.

On April 7, 2014, the ALJ entered its findings of fact and rulings of law in which it awarded Appellant $13,185.27 in compensation for 15% permanent partial disability to the right elbow, $2,248.96 for temporary total disability, and $1,674.32 for disfigurement. With respect to attorney's fees, the ALJ determined that the "compensation awarded to [Appellant] shall be subject to a lien in the amount of 25 percent in favor of [Counsel], for necessary legal services rendered." However, the ALJ specifically found that Counsel was not entitled to a 25% attorney's lien on the $38,462.07 in undiscounted medical bills.

3

On April 15, 2014, Appellant filed his application for review with the Commission. The single issue raised in the application was whether Counsel was entitled to a 25% lien on the $38,462.07 in undiscounted medical bills. On July 16, 2014, the Commission affirmed and adopted the ALJ's award. In doing so, the Commission specifically approved and affirmed the ALJ's allowance of attorney's fees, deeming it to be fair and reasonable.

Appellant now raises four points on appeal from the Commission's final award allowing compensation. Our review of the Commission's award[1] is governed by § 287.495.1, which provides:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> > (1) That the commission acted without or in excess of its powers;
> >
> > (2) That the award was procured by fraud;
> >
> > (3) That the facts found by the commission do not support the award;
> >
> > (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We defer "to the Commission's factual findings and recognize that it is the Commission's function to determine credibility of witnesses."*Riley v. City of Liberty*, 404 S.W.3d 434, 439 (Mo. App. W.D. 2013) (internal quotation omitted)."However, when an administrative agency decision is based on the agency's interpretation and application of the law, we review the administrative agency's conclusions of law and its decision *de novo.*"*Id.* (internal quotation omitted).

---

[1] "When, as here, the Commission affirms and adopts the ALJ's award, we review the ALJ's findings as adopted by the Commission." **Poarch v. Treasurer of Mo.**, 365 S.W.3d 638, 642 (Mo. App. W.D. 2012) (internal quotation omitted).

4

Because they are interrelated, we address Appellant's first and fourth points together. In his first point, Appellant contends that the Commission erred in denying Counsel an attorney's lien on the $38,462.07 in undiscounted medical bills because the Commission disregarded the attorney-client contract, which provided for a 25% lien on all proceeds, including medical expenses. In his fourth point, Appellant again avers that the Commission disregarded the attorney-client contract and, instead, erroneously focused on the services provided by Counsel in determining whether Counsel was entitled to a 25% lien on the undiscounted medical bills.

We recognize that Appellant entered into a contract with Counsel stating that Appellant agreed to pay Counsel "twenty-five percent (25%) of all gross proceeds including future payments." We further acknowledge that Missouri cases intimate that attorney-client contracts should be taken into consideration when reviewing the Commission's award of attorney's fees. *See* *Hunt v. Laclede Gas Co.*, 869 S.W.2d 770, 773 (Mo. App. E.D. 1993) (indicating that attorney-client agreements should be honored by the Commission); *Page v. Green*, 758 S.W.2d 173, 175 (Mo. App. S.D. 1988) (analyzing an attorney-client agreement in determining whether the attorney was entitled to a lien on the medical expenses awarded to the claimant). Nevertheless, Missouri courts have consistently held that "[t]he Commission's decision regarding attorney's fees may be reversed only if it can be established, as a matter of law, that the allowance was so inadequate and so unreasonable to constitute an abuse of discretion." *Faulkner v. St. Luke's Hosp.*, 903 S.W.2d 588, 593-94 (Mo. App. W.D. 1995) (affirming the Commission's cap on attorney's fees despite the appellant's contention that "the Commission erred in failing to presume the validity of the attorney's

5

fee agreement between attorney and client") *overruled on other grounds by* ***Hampton v. Big Boy Steel Erection***, 121 S.W.3d 220, 225 (Mo. banc 2003).

> Pursuant to § 287.260.1:
>
> All attorney's fees for services in connection with this chapter shall be subject to regulation by the division or the commission and shall be limited to such charges as are fair and reasonable and the division or the commission shall have jurisdiction to hear and determine all disputes concerning the same.

**§ 287.260.1**.  Missouri regulations further provide:

> If the services of an attorney are found to be necessary in proceedings for compensation, the administrative law judge shall set a reasonable fee considering relevant factors which may include, but are not limited to, the nature, character and amount of services rendered, the amount in dispute, and the complexity of the case and may allow a lien on the compensation due to the claimant.

**8 C.S.R. § 50-2.010(15)**.  Thus, under Missouri law, the Commission is authorized to hear all disputes concerning attorney's fees and to set a reasonable fee or lien after considering all relevant factors.

"The general practice in Missouri is to set a fee not to exceed 25% of the award." ***Page***, 758 S.W.2d at 176 (internal quotation omitted).  Such fees "can be based upon the whole award, including medical and nursing expenses." ***Id.*** "In most instances, there is no fee charged or taken for . . . medical and hospital bills . . . unless litigation is necessary for payment, in which case there is a 25% charge." **II Missouri Workers' Compensation Law § 11.4** (MoBar 4th ed. 2013); *see also* **29 Mo. Practice Series** ***Workers' Compensation Law & Practice*** § 5.36 (2d ed. 2003) ("Although a claimant's attorney fee may be based on all benefits awarded to the claimant, including medical and similar expenses, such fees are generally not awarded or allowed on benefits which are uncontested and are voluntarily paid by an employer or its insurer without need for

6

involvement by the employee's attorney."). Thus, while attorney's fees can be based upon the entire award, including medical bills and expenses, such fees normally are not awarded unless litigation is necessary for securing payment.

This case presents an unusual scenario in which, although litigation was necessary to obtain payment of Appellant's medical bills, the final award did not provide for medical expenses. Rather, after the filing of Appellant's workers' compensation claim but prior to the award, Employer agreed to and paid all of Appellant's medical expenses directly to the medical providers. Thus, while the litigation undoubtedly led to Appellant securing payment of his medical bills from Employer, such amounts were not included as part of the compensation award that the ALJ determined was subject to a 25% lien in favor of Counsel.

The ALJ, therefore, analyzed separately whether it was reasonable to order a 25% attorney's lien in favor of Counsel on the $38,462.07 in undiscounted medical bills that Employer initially refused to pay. In doing so, the ALJ determined that, based upon the evidence, Counsel did not undertake "any significant representation that would exceed the scope of the customary 25% contingency fee that is standard in Workers' Compensation [cases]."

We are mindful that denying attorney's fees for work prosecuted on behalf of an injured claimant can have "a chilling effect upon the ability of an injured party to obtain adequate representation."*Page*,758 S.W.2d at 176. Placing restrictions upon attorney's fees that "prevent an attorney from receiving a reasonable fee often work a hardship upon potential clients because they cannot secure the assistance they need."*Wilmeth v. TMI, Inc.*, 26 S.W.3d 476, 485 (Mo. App. S.D. 2000) (internal quotation

7

omitted) *overruled on other grounds by* **Hampton**, 121 S.W.3d at 225. Nevertheless, our limited review "leaves us little room to 'second guess' the Commission." **Faulkner**, 903 S.W.2d at 594. Thus, while we are sympathetic to Appellant's contentions that Counsel should be adequately compensated for the effort expended in obtaining payment for Appellant's medical expenses, the record before us does not establish, as a matter of law, that limiting Counsel's lien to 25% of the compensation award was so inadequate and so unreasonable as to constitute an abuse of discretion.

The record reflects that, within three months of Appellant filing his workers' compensation claim, Employer agreed to pay Appellant's medical bills. During those three months, Counsel filed a workers' compensation claim on behalf of Appellant, provided Employer with copies of Appellant's medical bills, attended Appellant's deposition, and offered a settlement compromise. There is no evidence in the record, however, detailing Counsel's specific efforts to recover payment from Employer for Appellant's medical bills. Therefore, based upon the limited record before us and the amount of deference owed to the Commission, we cannot say that the denial of a 25% lien on the undiscounted medical bills amounted to an abuse of discretion.

Appellant further contends in his fourth point[2] that by disregarding the attorney-client contract, the Commission erroneously focused upon evidence of Counsel's

_____

[2] Appellant further contends in his fourth point that the Commission erroneously applied the standard for awarding costs and attorney's fees set forth in § 287.560 when it declined to award Counsel a 25% lien on the undiscounted medical bills. Section 287.560 provides, in pertinent part:

> All costs under this section shall be approved by the division and paid out of the state treasury from the fund for the support of the Missouri division of workers' compensation; provided, however, that *if the division or the commission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who so brought, prosecuted or defended them.*

(Emphasis added). However, although the Commission's award references § 287.560, the Commission specifically stated that "[t]here are no allegations that either party has been unreasonable in the

8

services pertaining to Appellant's medical expenses in determining whether Counsel was entitled to a lien. However,"[t]he determination of a fair and reasonable fee involves a balancing of many interests."*Arledge v. Progressive Tire Dist.*, 924 S.W.2d 506, 511 (Mo. App. W.D. 1996) (internal quotation omitted)*overruled on other grounds by**Hampton*, 121 S.W.3d at 225. Missouri law specifically provides that, in setting a reasonable attorney's fee or lien, the ALJ should consider all relevant factors, which may include "*the nature, character and amount of services rendered*, the amount in dispute, and the complexity of the case."**8 C.S.R. § 50-2.010(15)** (emphasis added). Accordingly, the ALJ did not err in considering the type and extent of services provided by Counsel in determining whether Counsel was entitled to an attorney's lien on the undiscounted medical bills. Points denied.

In his second point, Appellant asserts that the Commission erred in denying Counsel a 25% lien on the undiscounted medical bills because Employer waived its right to direct payment of Appellant's medical bills when it initially denied liability. Appellant argues that, just as an employer waives its right to direct a claimant's medical treatment by denying liability for a claimant's medical care,*Schneidler v. Feeder's Grain & Supply, Inc.*, 24 S.W.3d 739, 742 (Mo. App. E.D. 2000), an employer also waives its right to pay a claimant's medical bills to medical providers after the employer initially denies liability for a claimant's medical expenses.

---

prosecution or defense of this matter" and later reiterated that the "only issue appears to be whether counsel is entitled to assert a lien on medical bills that were unpaid at the time of the filing of a claim." Thus, the record refutes Appellant's contention that the Commission applied the wrong standard set forth in § 287.560.

9

Appellant, however, fails to cite any legal authority supporting such a proposition.[3] Instead, he relies upon ***Crowell v. Hawkins***, 68 S.W.3d 432 (Mo. App. E.D. 2001)*overruled on other grounds by**Hampton*, 121 S.W.3d at 225. In *Crowell*, the claimant requested a § 287.203 hearing after his employer stopped paying him temporary total disability benefits. ***Id.***at 440. At the time, § 287.203 provided that a claimant disputing the employer's termination of benefits could request a hearing and that reasonable costs of the hearing would be awarded to whichever party prevailed at the hearing.[4]***Id.*** A hearing was scheduled in the matter but, before it could be held, the employer recommenced paying the claimant's benefits. ***Id.*** The claimant contended that, by resuming payment, the employer confessed the employee's motion thereby entitling the claimant to costs and attorney's fees specified under § 287.203. ***Id.***at 439-40. On appeal, the Eastern District found that, although no hearing was held, the claimant was entitled to the costs and attorney's fees in pursuing his request for a hearing because to hold otherwise would allow employers "to manipulate the proceedings" and escape liability for the costs the employee incurs in making the employer pay the benefits he or she is rightfully due. ***Id.***at 440.

Appellant argues that allowing employers to negotiate with and pay medical bills directly to the medical providers after they initially deny liability similarly permits employers to manipulate the system and escape liability for the effort expended by

---

[3]"Where an employer denies the allegations in an employee's claim, it also necessarily denies liability for medical aid to the employee and the employee may be entitled to an award for the cost of medical services." ***Wiedower v. ACF Indus., Inc.***, 657 S.W.2d 71, 74 (Mo. App. E.D. 1983). With that said, our research produced no case law indicating that an employer waives its right to pay for the claimant's medical expenses at a later date prior to the issuance of an award.

[4] We note that the language in § 287.203 pertaining to awarding costs to the prevailing party has been removed. Section 287.203 now provides: "If the division or the commission determines that any proceedings have been brought, prosecuted, or defended without reasonable grounds, the division may assess the whole cost of the proceedings upon the party who brought, prosecuted, or defended them." **§ 287.203** Cum. Supp. 2011.

attorneys in recovering payment of clients' medical bills. We are inclined to agree with Appellant that, by directly negotiating with and paying medical providers after initially denying liability, employers interfere with an attorney's ability to collect attorney's fees for the effort expended in recovering payment for their clients' medical expenses. Nevertheless, unlike in *Crowell*, there is no statute offended by or proscribing Employer's conduct. Accordingly, we cannot say that Employer waived its right to pay Appellant's medical bills prior to the award. Point denied.

In his third point, Appellant contends that the Commission erred in denying Counsel a 25% lien on the undiscounted medical bills because the Commission failed to consider that, pursuant to Missouri's general attorneys' lien statute, § 484.140,[5] Counsel notified Employer of his 25% lien on the unpaid medical bills. However, § 287.260 grants exclusive authority to the Commission with respect to attorneys' liens in workers' compensation cases in that it limits attorney's fees and liens to fair and reasonable charges as determined by the Commission. Thus, while § 484.140 provides generally

---

[5] Section 484.140 provides:

> In all suits in equity and in all actions or proposed actions at law, whether arising ex contractu or ex delicto, it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as herein provided between such attorney and his client.

11

for an attorney's lien, in the workers' compensation context, the lien applies only to the amount of the fees as determined by the Commission. *See**Clark v. Midwest Bakeries & Macaroni Mfg., Co.***, 201 S.W.2d 423, 426 (Mo. App. 1947) (noting that thepredecessor statute to § 287.260 indicated a purpose on the part of the legislature to "preserve the award against the claims of all persons except as to attorneys' fees and even then only to the extent the Commission may allow").[6] In this instance, the Commission determined Counsel was entitled to a 25% attorney's lien on the award, which did not include Appellant's undiscounted medical expenses. Accordingly, despite Counsel's notification pursuant to § 484.140, Counsel's attorney's lien is still limited to the fee as awarded by the Commission. Point denied.[7]

The Commission's award is affirmed.

_____
Joseph M. Ellis, Judge

All concur.

---

[6] To the extent ***Clark v. Midwest Bakeries & Macaroni Mfg., Co.***, 201 S.W.2d 423, 425-26 (Mo. App. 1947), can be read to suggest that the general attorneys' lien statutes are inapplicable due to § 287.260's exclusivity, such language is dicta. In *Clark*, this Court held that the attorney was not entitled to any lien because he failed to give timely notice to the Commission and because the Commission made no allowance for the attorney's services as a lien. ***Id.*** at 425. Therefore, just as indicated by our analysis here, an attorney is entitled to a lien on a workers' compensation award only to the extent permitted and awarded by the Commission. On that basis, *Clark* is not inconsistent with our analysis in this case or our holding in ***Lake v. Levy***, 390 S.W.3d 885 (Mo. App. W.D. 2013).

[7] In his third point, Appellant also contends that payment of medical bills must be made to the employee/claimant, not directly to the medical providers. However, § 287.140.1 specifically provides that where medical treatment is "furnished by a public hospital or other institution, payment therefor shall be made to the proper authorities." Thus, the Workers' Compensation Law instructs employers to pay a claimant's medical bills directly to the medical provider. *See **Gill v. Massman Constr. Co.***, 458 S.W.2d 878, 882 (Mo. App. 1970) *supersededon other grounds by statute as recognized in**Kasl v. Bristol Care, Inc.***, 984 S.W.2d 852, 855 (Mo. banc 1999).